[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 74.]

THE STATE OF OHIO, APPELLANT, *v.* LOZADA, APPELLEE.

[Cite as *State v. Lozada*, 2001-Ohio-149.]

*Criminal law—Motor vehicles—During routine traffic stop, it is reasonable for officer to search driver for weapons before placing driver in patrol car, when—During routine traffic stop, it is unreasonable for officer to search driver for weapons before placing driver in patrol car, when.*

(No. 99-2316—Submitted December 13, 2000—Decided June 20, 2001.)

APPEAL from the Court of Appeals for Portage County, No. 98-P-0098.

_____

SYLLABUS OF THE COURT

1. During a routine traffic stop, it is reasonable for an officer to search the driver for weapons before placing the driver in a patrol car, if placing the driver in the patrol car during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid the dangerous condition.

2. During a routine traffic stop, it is unreasonable for an officer to search the driver for weapons before placing him or her in a patrol car, if the sole reason for placing the driver in a patrol car during the investigation is for the convenience of the officer.

_____

LUNDBERG STRATTON, J.

{¶ 1} On May 6, 1997, Ohio State Patrol Trooper Corey D. Davies stopped a vehicle operated by the defendant, Roberto Lozada, on the Ohio Turnpike. Trooper Davies approached the passenger side of the vehicle and informed the defendant that he was stopped for speeding. The defendant was in the driver's seat, the front passenger seat was empty, and there were two passengers in the back seat.

Trooper Davies asked the defendant to produce a driver's license and registration and then to exit the vehicle. Trooper Davies met the defendant in between his vehicle and the patrol car. Trooper Davies asked the defendant from where he had come and where he was going.

{¶ 2} Trooper Davies told the defendant that he was going back to his patrol car to check the license and registration and requested the defendant to come with him. Trooper Davies then asked the defendant "if he had guns, knives, or any hand grenades." The defendant denied having any weapons. Trooper Davies indicated that he would pat down defendant to be sure he had no weapons. While executing the pat-down search, Trooper Davies testified that "[w]hen I got to the area of his jacket pocket, he pulled away a little bit ever so much, and that when he did that, I thought there was something in there that could hurt me." This prompted Trooper Davies to reach into the defendant's jacket pocket where he found two small bags containing cocaine. The defendant was arrested.

{¶ 3} On October 1, 1997, the defendant was indicted on one count of possession of cocaine. On December 26, 1997, the defendant filed a motion to suppress the cocaine that was discovered in his jacket. The trial court overruled the motion, and the defendant subsequently pled no contest and was found guilty.

{¶ 4} The defendant filed an appeal, alleging that there was no probable cause justifying the trooper's search that resulted in the discovery of the cocaine. In a split decision, the appellate court agreed, finding that "there was no reasonable, objective basis for Officer Davies to pat-down appellant, based upon the totality of the circumstances," and consequently held that the trial court erred in overruling the defendant's motion to suppress.

{¶ 5} This cause is now before the court pursuant to the allowance of a discretionary appeal.

**{¶ 6}** There is no dispute over the validity of the initial traffic stop for speeding. The issue is whether it was reasonable to search the defendant for weapons before placing him in Trooper Davies's patrol car.

**{¶ 7}** The state argues that, during a traffic stop, if the detention of the driver in a patrol car is "legitimate and lawful," then the officer is justified in searching the driver for weapons before placing him or her in a patrol car, even where the officer has no belief that the driver is armed and dangerous. The state asserts three reasons why the detention of the defendant in Trooper Davies's patrol car would have been legitimate and lawful: (1) it allowed Trooper Davies to use the radio in the patrol car, away from traffic noise, which "facilitated the officer's investigation," (2) it allowed Trooper Davies to stay safely away from the turnpike traffic, and (3) it minimized the chance that Trooper Davies would be ambushed. Finally, although the state does not argue that every traffic stop justifies a pat-down search of the driver and placement of the driver in the patrol car, Trooper Davies testified that it is his "standard practice" during a traffic stop to search the driver for weapons and then place the driver in his patrol car.

**{¶ 8}** Typically, to conduct a pat-down search for weapons, an officer must have a "specific and articulable" belief based on the "reasonably prudent man" standard that an individual is armed and dangerous. *Terry v. Ohio* (1968), 392 U.S. 1, 21, 27, 88 S.Ct. 1868, 1880, 1883, 20 L.Ed.2d 889, 906, 909. To allow such a search based on "[a]nything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than [an] inarticulate [hunch], a result that this Court has consistently refused to sanction." *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. However, this is not a *Terry* case because there was no evidence that Trooper Davies believed that the defendant was armed and dangerous. Rather, the state urges that if a person is legitimately detained in a patrol car, the nature of the detention, *i.e.,* placement of the detainee in close proximity to

the officer, raises safety concerns that necessitate searching any person for weapons before placing that person in the patrol car.

{¶ 9} Thus, we must determine, during a traffic stop, if and when circumstances dictate that an officer may search a driver for weapons and place him or her in a patrol car even where the officer has no belief that the driver is armed and dangerous. As a New York court has recognized, "Although a police officer may reasonably pat down a person before he places him in the back of a police vehicle, the legitimacy of that procedure depends on the legitimacy of placing him in the police car in the first place." *People v. Kinsella* (1988), 139 A.D.2d 909, 911, 527 N.Y.S.2d 899, 901.

*Placement of Driver in Patrol Car During Traffic Stop as Matter of Practice*

{¶ 10} Trooper Davies testified that it was his "practice" during a traffic stop to order the driver into his patrol car after performing a pat-down search for weapons. Numerous courts have held that an officer may ask a driver to sit in his or her patrol car to *facilitate* the traffic stop. See, *e.g.*, *State v. Carlson* (1995), 102 Ohio App.3d 585, 657 N.E.2d 591. See, also, *State v. Warrell* (1987), 41 Ohio App.3d 286, 287, 534 N.E.2d 1237, 1239, and *United States v. Barahona* (C.A.8, 1993), 990 F.2d 412. However, there was no evidence in these cases that the drivers were searched for weapons before entering the patrol car.

{¶ 11} The placement of a driver in a patrol car during a routine traffic stop may be constitutionally *permissible*. See *Carlson, supra*. However, that alone is not a legitimate justification to subject the driver to a pat-down search for weapons. While the intrusion of asking a driver to sit in a patrol car to facilitate a traffic stop may be relatively minimal, the level of intrusion on the driver dramatically increases when the driver is subject to a pat-down search for weapons before entering the patrol car. To subject a driver to such an intrusion, when the underlying reason for placing him or her in the patrol car is mere convenience, would

4

effectively eviscerate the *Terry* standard without justification. As a Texas appellate court recognized:

"[T]aking the State's logic to its natural conclusion would completely dispense with the rule in *Terry*. The Supreme Court has stated that a police officer can, as a matter of routine, order a suspect out of his car during a traffic stop. Under the State's theory, once an officer has ordered a person out of his car, the officer could always, as a matter of routine, order the person to sit in the patrol car, and then always, as a matter of routine, frisk for weapons before allowing the suspect into the car. So every single traffic stop could be transformed, as a matter of routine, into a *Terry* stop. This would violate the 'narrow scope' of *Terry* and dispense with any need for an officer to have specific and articulable facts to justify his actions. As the *Sikes* [v. State (Tex.App.1998), 981 S.W.2d 490, 494] court noted, we have held that 'the Fourth Amendment protection against seizures cannot be whittled away by a police regulation.' We reject the State's argument that routine alone is sufficient to justify a pat-down." (Footnotes omitted.) *O'Hara v. State* (Tex.Crim.App.2000), 27 S.W.3d 548, 553.

{¶ 12} Thus, we hold that during a routine traffic stop, it is unreasonable for an officer to search the driver for weapons before placing him or her in a patrol car, if the sole reason for placing the driver in the patrol car during the investigation is for the convenience of the officer.

{¶ 13} In this case, Trooper Davies testified that it was his practice during a traffic stop to pat down the driver and to place the driver in his patrol car during the investigation. To the extent that Trooper Davies's pat-down search of the defendant was due to this practice, the search of the defendant for weapons was unreasonable.

*Placement of Driver in Patrol Car to Protect Officer or Driver from Dangerous Condition*

{¶ 14} The state argues that during a traffic stop, if the officer has a "legitimate and lawful" reason to detain the driver in a patrol car, the officer is likewise justified in searching the driver for weapons before placing him or her in the patrol car.

{¶ 15} In *State v. Evans* (1993), 67 Ohio St.3d 405, 618 N.E.2d 162, paragraph one of the syllabus, we held that "[t]he driver of a motor vehicle may be subjected to a brief pat-down search for weapons where the detaining officer has a *lawful* reason to detain said driver in a patrol car." (Emphasis added.) In *Evans*, officers stopped a vehicle driven by Dwayne Evans because a headlight on his car was burned out. When Evans failed to produce his driver's license, the officers asked him to step out of his car and the officers conducted a pat-down search in anticipation of placing him in the cruiser. The officers discovered drugs during the pat-down search, arrested Evans, and placed him in the patrol car.

{¶ 16} Evans challenged the legality of the pat-down search. The trial court denied his motion to suppress, but the court of appeals reversed, holding that the search for weapons was unreasonable. This court reversed the appellate court's judgment and held that failure to produce a driver's license during a traffic stop is a "lawful" reason for detaining a driver in a patrol car, and, consequently, officers may search such a detainee for weapons before placing the driver in the patrol car. We found that the pat-down search was justified because we recognized that "it is reasonable that the officer, who has a legitimate reason to so detain that person [in a patrol car], is interested in guarding against an ambush from the rear." *Evans*, 67 Ohio St.3d at 410, 618 N.E.2d at 167.

{¶ 17} In the case at bar, the defendant produced a driver's license when requested by Trooper Davies. Thus, under *Evans,* it would have been unreasonable to subject the defendant to a pat-down search for weapons.

{¶ 18} However, the state would have us expand the definition of when a driver may be lawfully detained in a patrol car. The state argues that "there are sometimes legitimate public policy concerns such as the safety of the officer and the driver that justify an officer's placement of a driver into his patrol car."

{¶ 19} Although Evans was detained in the patrol car because he failed to produce a driver's license, paragraph one of the syllabus in *Evans* merely requires that detention in a patrol car be "lawful," to justify a pat-down search for weapons, thereby leaving open the possibility that a driver may be detained in a patrol car for other reasons.

{¶ 20} The Fourth Amendment sets the parameters for the detention of motorists during a traffic stop. "A traffic stop is usually brief, and the motorist expects that, while he may be given a citation, in the end he most likely will be allowed to continue on his way. Moreover, the typical traffic stop is conducted in public, and the atmosphere surrounding it is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* and subsequent cases in which *Miranda* has been applied." *Berkemer v. McCarty* (1984), 468 U.S. 420, 421, 104 S.Ct. 3138, 3140, 82 L.Ed.2d 317, 323. Syllabus of the Reporter of Decisions of the United States Supreme Court. Consequently, investigative methods employed during the stop should be the least intrusive means available. See *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 1325-1326, 75 L.Ed.2d 229, 238.

{¶ 21} However, " '[t]he touchstone of our analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of a particular governmental invasion of a citizen's personal security." ' " *Evans*, 67 Ohio St.3d at 409, 618 N.E.2d at 166, quoting *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 108-109, 98 S.Ct. 330, 333-334, 54 L.Ed.2d 331, 335, quoting *Terry*, 392 U.S. at 19, 88 S.Ct. at 1878-1879, 20 L.Ed.2d at 904. "A determination as to the reasonableness of a particular police procedure depends 'on a balance between the

public interest and the individual's right to personal security free from arbitrary interference by law officers.' " *Evans*, 67 Ohio St.3d at 410, 618 N.E.2d at 167, quoting *United States v. Brignoni-Ponce* (1975), 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607, 614-615.

{¶ 22} Placing a driver in a patrol car during a routine traffic stop increases the intrusive nature of the detention. *Goss v. State* (Fla.App.1999), 744 So.2d 1167, 1168. Subjecting a driver to a pat-down search for weapons before placing the driver in a patrol car further increases the level of intrusion because "[e]ven a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." *Terry,* 392 U.S. at 24-25, 88 S.Ct. at 1881-1882, 20 L.Ed.2d at 908.

{¶ 23} On the other hand, the United States Supreme Court has recognized that safety of police officers is "legitimate and weighty." *Pennsylvania v. Mimms*, 434 U.S. at 110, 98 S.Ct. at 333, 54 L.Ed.2d at 336. *Mimms* addressed the protection of officers from a potentially armed and dangerous driver even absent a belief that the driver was armed and dangerous. However, it is equally evident that keeping officers safe from a dangerous condition is also legitimate and weighty. See *Mimms*, 434 U.S. at 111, 98 S.Ct. at 333, 54 L.Ed.2d at 336. The same is true for the driver. Thus, it is reasonable to place the driver in a patrol car *and* subject him or her to a pat-down search for weapons where placement of the driver in the patrol car is justified to protect the officer or the driver from a dangerous condition. For example, during a traffic stop, where a hostile crowd threatens officers or the driver, the officers may be justified in placing the driver in a patrol car for the duration of the traffic stop, if necessary. See, *e.g., State v. Stroud* (Oct. 11, 1995), Montgomery App. No. 14832, unreported, 1995 WL 600004.

{¶ 24} We do not take lightly the encroachment into one's personal liberty by allowing a driver to be placed in a patrol car and subjecting him or her to a pat-

down search for weapons. However, by comparison, we find this intrusion relatively minimal if it protects the officers or the driver from a dangerous condition during the traffic stop. Thus, under the *Brignoni-Ponce* balancing test, we find that the safety of officers and drivers outweighs the intrusion caused by a pat-down search upon the driver.

{¶ 25} Accordingly, we hold that, during a routine traffic stop, it is reasonable for an officer to search the driver for weapons before placing the driver in a patrol car, if placing the driver in the patrol car during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid the dangerous condition.

{¶ 26} The state argues that the defendant was placed in Trooper Davies's patrol car to allow Trooper Davies to use the radio in his patrol car because it was away from traffic noise and thereby "facilitated" the investigation. We do not doubt that using the radio in the patrol car away from traffic noise would have *facilitated* the investigation. However, the state gives no reason, let alone a safety-based reason, why the defendant would have had to accompany Trooper Davies to his patrol car in order for the trooper to use the radio. Thus, we find the state's argument unpersuasive.

{¶ 27} The state also argues that placing the defendant in Trooper Davies's patrol car would have allowed the trooper to stay away from the turnpike traffic. We fail to comprehend how placing the defendant in the patrol car would have eliminated Trooper Davies from being exposed to traffic. Presumably, it could have limited the number of trips that Trooper Davies made from his patrol car to the defendant's car during the stop, but it would not have eliminated Trooper Davies's need to initially approach the defendant's car after the stop. Further, and perhaps more important, in response to a question in which Trooper Davies was asked to describe his safety training in stopping motor vehicles along the highway, he stated:

"The safety of stopping vehicles, I try to get the vehicles away from guardrails. When I make the approach, I approach on the right side to stay away from traffic. I try to get as far away from the road as I can. When the vehicle is stopped, I try to position my vehicle so I am safe when I get out of the vehicle, and when I make a right side approach. I also do that to stay away from traffic."

{¶ 28} Trooper Davies executed a "right side approach" when he approached the vehicle driven by the defendant. Thus, we find no merit in the state's argument because the right-side-approach method kept Trooper Davies safely away from the traffic.

{¶ 29} Finally, the state asserts that placing the defendant in Trooper Davies's patrol car would have reduced the likelihood that the trooper would be ambushed. The state claims "that the danger to a police officer is increased where he approaches a vehicle with multiple occupants," citing *United States v. Rodgers* (C.A.6, 1999), 182 F.3d 919, unpublished opinion, 1999 WL 503460, citing *Maryland v. Wilson* (1997), 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41.

{¶ 30} The state's interpretation of *Rodgers* is incorrect. The court in *Rodgers* found that the presence of multiple occupants in two vehicles was merely *one* of the factors that led officers to believe that the occupants were *armed and dangerous,* thereby justifying a pat-down search for weapons pursuant to *Terry. Rodgers, supra.* The state does not argue that Trooper Davies was subject to a dangerous condition but rather that Trooper Davies was concerned that the driver and/or passengers were going to attack him. We find that there is no evidence to support such a belief because even after noticing that there were multiple occupants in the car, Trooper Davies testified that he did not suspect any criminal activity. When asked why he wanted to place the defendant in his patrol car, Trooper Davies stated that "I got him away from the others in the car * * * *in case* there was something unusual inside the car, that he would be away from it." (Emphasis added.) To justify the placement of the defendant in Trooper Davies's patrol car,

10

which in turn would subject him to being searched for weapons, based on this evidence, would be sanctioning the search and seizure on an "inarticulate hunch," something *Terry* prohibits. The mere fact that a car contains multiple passengers is, by itself, an insufficient basis to justify a search.

{¶ 31} Despite the fact that Trooper Davies was not justified in placing the defendant in his patrol car, he could have ordered the defendant and the passengers out of the defendant's car as a precautionary measure, regardless of whether he had any reason to believe that they were armed and dangerous. See *Mimms,* 434 U.S. at 110-111, 98 S.Ct. at 333, 54 L.Ed.2d at 336-337; *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41.

{¶ 32} The *Mimms* court found that this is a *de minimis* "intrusion into the driver's personal liberty," and recognized that "[e]stablishing a face-to-face confrontation diminishes the possibility, otherwise substantial, that the driver can make unobserved movements, [which], in turn, reduces the likelihood that the officer will be the victim of an assault." (Footnote omitted.) *Mimms,* 434 U.S. at 110, 98 S.Ct. at 333, 54 L.Ed.2d at 336. Accordingly, the court held that merely ordering a driver out of his or her car during a traffic stop "is at most a mere inconvenience [that] cannot prevail when balanced against legitimate concerns for the officer's safety." (Footnote omitted.) *Mimms*, 434 U.S. at 111, 98 S.Ct. at 333, 54 L.Ed.2d at 337. Thus, pursuant to *Mimms* and *Wilson*, Trooper Davies could have ordered the defendant, as well as the passengers, out of the car as a precautionary measure based on a mere hunch. However, for whatever reason, he did not use this procedure.

{¶ 33} Therefore, we find that the state has not presented sufficient evidence that there was a dangerous condition during this traffic stop to justify placement of the defendant in Trooper Davies's patrol car.

*Conclusion*

**{¶ 34}** For all of the aforementioned reasons, we hold that Trooper Davies's search of the defendant for weapons before placing him in the trooper's patrol car was unreasonable. Thus, the cocaine discovered during the pat-down search is inadmissible because it is fruit of the poisonous tree. Accordingly, we affirm the judgment of the court of appeals remanding the cause to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed.*

MOYER, C.J., F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS and RESNICK, JJ., concur in judgment and in paragraph one of the syllabus but dissent to paragraph two of the syllabus.

COOK, J., concurs in judgment only.

_____

*Victor V. Vigluicci*, Portage County Prosecuting Attorney, and *Kelli K. Norman*, Assistant Prosecuting Attorney, for appellant.

*S. Kim Kohli,* for appellee.

_____