DECISION AND JUDGMENT ENTRY
This is an accelerated appeal from a judgment of the Sandusky County Court of Common Pleas which, after denying a motion to suppress filed by appellant, Gale R. Hoffman, accepted appellant's no contest plea and found appellant guilty of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(a). In his assignment of error, appellant argues that his pat-down search[1] by the police officer was violative of theFourth Amendment. For the reasons stated herein, this court affirms the judgment of the trial court.
The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. United States v.Hensley (1985), 469 U.S. 221, 226. Accordingly, in order to warrant a brief investigatory stop, a police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terryv. Ohio (1968), 392 U.S. 1, 21.[2] Reasonable suspicion connotes something less than probable cause, but something more than an "inchoate and unparticularized suspicion or hunch." Id. at 27.
During a legitimate investigative stop, if a police officer has a reasonable suspicion that an individual is armed, the officer may conduct a limited protective search for the safety of the officer and the public. State v. Bobo (1988), 37 Ohio St.3d 177, paragraph two of the syllabus. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue the investigation without fear of violence. Terry, 392 U.S. at 30. The reasonableness of both an investigatory stop and a protective search must be viewed in light of the totality of the circumstances. Bobo, 37 Ohio St.3d 177 at paragraphs one and two of the syllabus.
When considering a motion to suppress, a trial court assumes the role of the trier of fact and, therefore, is in the best position to resolve factual questions and evaluate the credibility of a witness. State v.Mills (1992), 62 Ohio St.3d 357, 366. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. An appellate court must independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. Id.
Appellant cites State v. Lozada (2001), 92 Ohio St.3d 74 in support of his assignment of error. However, the Lozada case is distinguishable from the case sub judice.
In Lozada, the defendant was stopped for a routine traffic violation. The officer testified that "his practice during a traffic stop [was] to pat down the driver and to place the driver in his patrol car during the investigation." Id. at 77. The Ohio Supreme Court held:
 "During a routine traffic stop, it is unreasonable for an officer to search the driver for weapons before placing him or her in a patrol car, if the sole reason
for placing the driver in the patrol car during the investigation is for the convenience of the officer." Id., at paragraph two of the syllabus. (Emphasis added.)
The state in Lozada also argued that "legitimate public policy concerns such as the safety of the officer and the driver * * * justify an officer's placement of a driver into his patrol car." Id. at 78. The Ohio Supreme Court stated:
 "* * * the United States Supreme Court has recognized that safety of police officers is `legitimate and weighty.' Pennsylvania v. Mimms, 434 U.S. at 110, 98 S.Ct. at 333, 54 L.Ed.2d at 336. Mimms addressed the protection of officers from a potentially armed and dangerous driver even absent a belief that the driver was armed and dangerous. * * *
 "We do not take lightly the encroachment into one's personal liberty by allowing a driver to be placed in a patrol car and subjecting him or her to a pat-down search for weapons. However, by comparison, we find this intrusion relatively minimal if it protects the officers or the driver from a dangerous condition during the traffic stop. Thus, under the Brignoni-Ponce balancing test, we find that the safety of officers and drivers outweighs the intrusion caused by a pat-down search upon the driver." Id. at 79.
In Lozada, the state also argued that placing the defendant in the patrol car would have reduced the likelihood that the trooper would be ambushed, arguing that the danger to a police officer is increased where he approaches a vehicle with multiple occupants. Id. at 80. In response to this argument the Ohio Supreme Court stated:
 "We find that there is no evidence to support such a belief because even after noticing that there were multiple occupants in the car, Trooper Davies testified that he did not suspect any criminal activity. When asked why he wanted to place the defendant in his patrol car, Trooper Davies stated that `I got him away from the others in the car * * * in case there was something unusual inside the car, that he would be away from it.' (Emphasis sic.) To justify the placement of the defendant in Trooper Davies's patrol car, which in turn would subject him to being searched for weapons, based on this evidence, would be sanctioning the search and seizure on an `inarticulate hunch,' something Terry
prohibits. The mere fact that a car contains multiple passengers is, by itself, an insufficient basis to justify a search." Id. at 80-81.
In the case sub judice, the officer specifically testified that he patted down appellant for "officer's safety reasons, to make sure he didn't have any weapons on him." The officer also testified that:
 "I didn't feel safe to leave him stand outside the vehicle to my back while I talked to the passengers in the car, so I wanted to make sure he didn't have any type of weapons or anything on him."
The officer also testified that he had called for "back-up" as soon as he initiated the stop because there were illegal drugs in the vehicle and he was alone. As the trial court noted at the suppression hearing, "it is well known that associated with drug use is weaponry use."
Appellant also argues that should this court find the pat-down search lawful, this court should find the recovery of the crack pipe violative of the plain feel doctrine. In Minnesota v. Dickerson (1993),508 U.S. 366, 375-76, the United States Supreme Court stated:
 "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context. (Footnote omitted.)"
The officer testified at the suppression hearing that as he patted down appellant he "felt something that [he] believed to be the crack pipe that [appellant] was smoking." Contrary to appellant's argument, the officer did not need to "manipulate the object to ascertain its identity." The officer testified:
 "I was able to feel it through the jacket, and after seeing [appellant] have it in his mouth I knew the size it was, and I could feel that it was the same pipe that he was smoking."
Therefore, the crack pipe was found pursuant to the plain feel doctrine.
Upon review of the above law and the record in this case, this court finds that the trial court did not err in denying appellant's motion to suppress. Accordingly, appellant's assignment of error is found not well-taken.
On consideration whereof, the court affirms the judgment of the Sandusky County Court of Common Pleas. It is ordered that appellant pay court costs for this appeal.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J., Richard W. Knepper, J., JUDGES CONCUR.
[1] On appeal, appellant does not challenge the officer's investigative stop of his vehicle. The officer's testimony at the suppression hearing established that he had reasonable suspicion that appellant was engaged in criminal activity: the officer testified in great detail regarding his observations of appellant lighting and smoking a crack pipe. The officer described the pipe's length, color and design. The officer also testified that he knew it was a crack pipe because of his knowledge of crack pipes and how they differ from tobacco pipes and the way appellant was lighting the crack pipe from the front end and not on the top of the pipe. Thus, the officer had "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the intrusion. Terry at 21.
[2] Although probable cause is the standard applicable to non-investigatory traffic stops, reasonable articulable suspicion justifies an investigatory Terry stop during which an officer seeks to investigate suspected criminal activity. In contrast to the typical traffic stop with a clear traffic violation, a Terry stop involves suspected criminal activity which requires investigation. See, State v.Moeller (Oct. 23, 2000), Butler App. No. CA99-07-128, unreported, regarding the apparent confusion over what standard applies to a given traffic stop.