OPINION
{¶ 1} This case is before us on the State's appeal of a trial court decision granting the Defendant's motion to suppress. In a single assignment of error, the State contends that the trial court erred by suppressing crack cocaine found in Defendant's pants pocket during a lawful patdown search.
 {¶ 2} After reviewing the record, the trial court decision, and the applicable law, we find the assignment of error without merit. Accordingly, the trial court judgment will be affirmed.
 {¶ 3} Defendant, Derrick Armstrong, was indicted in April, 2002, for possession of crack cocaine in an amount exceeding ten grams, but less than twenty-five grams. The charge against Armstrong arose from a traffic stop on April 23, 2002. On that day, two Dayton Police officers (Hall and Kowalski) were working as patrol officers in the strike force unit for narcotics, performing "proactive" patrols. At about 7:15 p.m., Hall and Kowalski spotted a car that they felt violated the window tint statute (R.C. 4513.241). The officers followed the car for two or three minutes, while running a computer search on the license plate. According to the search, the car was not stolen and the registered owner (Armstrong) did not have any pending warrants. However, the search did reveal that Armstrong had been the subject of several field interviews. During the interviews, Armstrong was found in possession of narcotics and a weapon. He was also combative with officers.
 {¶ 4} The officers pulled Armstrong's car over near Miami Valley Hospital, which is not a high crime area. At the time, it was still daylight. When Officer Hall approached the car, the driver's side and rear passenger windows were down about halfway, and Hall could see a gray soft-sided gun case for a rifle on the back seat. The case was about four feet long.
 {¶ 5} As the officers approached, Armstrong opened the car door and began getting his driver's license out of his wallet. When the officers told Armstrong why he had been stopped, Armstrong said he was aware of the window tint problem and had been stopped for it before. He also said that he had received a warning during the prior stop.
 {¶ 6} The officers took custody of Armstrong's license and asked him to step out of the car. Hall then told Armstrong that he was going to pat him down for possible weapons. Up to this point, Armstrong had been compliant. However, after Hall began the patdown, Armstrong resisted, by pushing against Hall's thumb and turning his body away from Hall. Eventually, Hall's partner handcuffed Armstrong's hands behind his back. Hall found nothing on the right side. However, while patting down the left side, Hall felt a bulge in Armstrong's front pocket that he immediately recognized as crack-cocaine. Hall then retrieved a bag of crack cocaine from the pocket.
 {¶ 7} At the suppression hearing, Hall testified that he asks all window tint violators to exit their vehicles, even if they have no prior field interviews or tickets. The reason for this is that in order to get a tint meter reading, an officer must place an arm and perhaps his or her head inside the car. Consequently, for safety reasons, officers do not want anyone inside the vehicle when they take the reading. Whenever Hall asks someone to step out of a vehicle during a traffic stop, he always places the person in his cruiser. Furthermore, before Hall places someone in the cruiser, he always does a patdown search as part of his routine, again, for purposes of officer safety.
 {¶ 8} Based on the above facts, the trial court concluded that the search was not a "Terry" search because Hall did not premise it on facts indicating that Armstrong was armed and dangerous. See Terry v. Ohio
(1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Instead, the trial court found that the decision to place Armstrong in the cruiser and to search him was made for the officers' convenience. The court, therefore, felt suppression of the evidence was required under State v. Lozada,92 Ohio St.3d 74, 2001-Ohio-149.
 {¶ 9} According to the State, these conclusions are incorrect, andLozada does not apply. In particular, the State contends that the presence of a gun case inside the car, and the prior field interview information, gave Officer Hall a reasonable, articulable belief that Armstrong was armed and dangerous. The State also claims that the trial court erroneously focused on Officer Hall's subjective motivation. However, we disagree.
 {¶ 10} In Lozada, an Ohio State Trooper testified that his "standard practice" during traffic stops was to search drivers for weapons and place the drivers in his patrol car. 92 Ohio St.3d at 75. Consistent with this practice, when the trooper stopped the defendant inLozada for speeding, he required the defendant to exit his vehicle. The trooper then searched the defendant and found two small bags of cocaine. Id. On appeal, the Ohio Supreme Court held that the search was unreasonable. In this regard, the court stressed that:
 {¶ 11} "`taking the State's logic to its natural conclusion would completely dispense with the rule in Terry. The [United States] Supreme Court has stated that a police officer can, as a matter of routine, order a suspect out of his car during a traffic stop. Under the State's theory, once an officer has ordered a person out of his car, the officer could always, as a matter of routine, order the person to sit in the patrol car, and then always, as a matter of routine, frisk for weapons before allowing the suspect into the car. So every single traffic stop could be transformed, as a matter of routine, into a Terry stop. This would violate the `narrow scope' of Terry and dispense with any need for an officer to have specific and articulable facts to justify his actions.'" 92 Ohio St.3d at 76-77, quoting from O'Hara v. State
(Tex.Crim.App. 2000), 27 S.W.3d 548, 553 (parenthetical material added).
 {¶ 12} As we mentioned, Officer Hall said that his standard practice in window tint violation situations is to ask drivers to leave their vehicles. According to Hall, he follows this practice irrespective of information about field interviews or traffic violations. Once a driver has left the vehicle, Hall's standard practice, again, is to pat the driver down and place him in the police cruiser. Under the circumstances, we see no distinction between the current situation andLozada. In this regard, the trial court found that these actions were taken for officer convenience, not because of concerns about the field interview information or the rifle case in the back seat. We agree with these conclusions. We note that we do not evaluate credibility when we review suppression decisions. Instead, we "`accept the trial court's findings of fact if they are supported by competent, credible evidence.'"State v. Cook, 149 Ohio App.3d 422, 425, 2002-Ohio-4812, ¶ 9. The record in this case contains competent, credible evidence supporting the trial court findings. Specifically, Armstrong could not conceivably have concealed a rifle on his person and there was no testimony that he made any type of furtive movements. Instead, Armstrong was completely cooperative until after the patdown began. This was a routine traffic stop for a minor misdemeanor during daylight hours, in a place that was not a high crime area. In addition, the officer did not base the search on the rifle case or the former field interviews. To the contrary, the search was part of the officer's standard or routine practice.
 {¶ 13} Moreover, by commenting on Officer Hall's reason for patting down Armstrong, the trial court did not improperly rely on Hall's subjective motives. To the contrary, the court was simply outlining Hall's routine practice as revealed by the testimony, just as the court did in Lozada, i.e., the Ohio Supreme Court noted in Lozada that the officer's "practice" during traffic stops was to "pat down the driver and place the driver in his patrol car during the investigation."92 Ohio St.3d at 77. Furthermore, as Armstrong correctly notes in his brief, the present case does not involve the validity of an investigatory stop. In such situations, an officer's subjective motivation for making a stop or continuing a detention is not relevant; instead, the focus is on the officer's "objective and particularized suspicion that an individual is engaged or about to engage in criminal activity for the investigatory stop to be justified." State v. Taylor (2000), 138 Ohio App.3d 139, 145, citing Whren v. United States (1996), 517 U.S. 806, 116 S.Ct. 1769,135 L.Ed.2d 89. However, the parties in the present case do not dispute that the officers had an appropriate basis for suspecting that a windshield tint violation existed.
 {¶ 14} In Lozada, the Ohio Supreme Court did say that "during a routine traffic stop, it is reasonable for an officer to search the driver for weapons before placing the driver in a patrol car, if placing the driver in the patrol car during the investigation prevents officers or the defendant from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid the dangerous condition." 92 Ohio St.3d at 79. In this context, Officer Hall testified that an additional reason for placing Armstrong in the police cruiser was for Armstrong's own safety, due to moderate traffic on the street. The trial court found this unpersuasive, since Armstrong would have been safer on the sidewalk away from traffic than he would have been in the back seat of the police cruiser. Another reason advanced was the possibility that Armstrong would run away from the police. However, in this regard, the court noted that Hall's partner, Kowalski, was available to monitor Armstrong while the window tint test was being conducted. Under the circumstances, the trial court concluded that placing Armstrong in the cruiser was not the least intrusive means to avoid a dangerous condition. Again, we agree.
 {¶ 15} Accordingly, in light of the preceding discussion, the single assignment of error is overruled and the trial court judgment is affirmed.
WOLFF, J., and YOUNG, J., concur.