JOURNAL ENTRY AND OPINION
{¶ 1} Defendant appeals the trial court denying his motion to suppress and his subsequent convictions for possessing[1]
and trafficking in drugs.[2]
 {¶ 2} On May 22, 2003, Cleveland police officer Robert Martin was conducting surveillance for drug crimes in the East 105th Street area of Cleveland he said was known for such activity. Martin observed defendant slow his car on two separate occasions. On the first of these occasions, defendant slowed his vehicle near two men Martin had arrested in the past for dealing drugs. The second time defendant slowed his car, Martin conducted a traffic stop to cite him for impeding the flow of traffic.[3] Martin made a request to search defendant's vehicle. Defendant consented and exited his car. Martin then conducted a pat-down search of defendant's person and seized a bag of crack cocaine from defendant's pants waistband
 {¶ 3} Defendant was indicted, pled not guilty, and filed a motion to suppress the drugs police seized from him. After the hearing held on defendant's motion to suppress, the court denied the motion and defendant pled no contest to both drug charges. Defendant appeals and presents one assignment of error for review:
 {¶ 4} "The trial court erred in overruling appellant'smotion to suppress where the search violates appellant's rightsagainst unreasonable search and seizure under theFourth Amendment to the U.S. Constitution and Section 14, Article 1 ofthe Ohio Constitution."
 {¶ 5} Defendant argues the trial court erred in denying his motion to suppress the drugs Martin confiscated from him. This court has previously explained the standard a court uses in reviewing such a motion:
i. "A motion to suppress evidence seeks to challenge thearrest, search or seizure as somehow being in violation of theFourth Amendment of the United States Constitution. The principalremedy for such a violation is the exclusion of evidence from thecriminal trial of the individual whose rights have been violated.See Katz, Ohio Arrest, Search and Seizure (2001) 31, Section 2.1.Exclusion is mandatory under Mapp v. Ohio (1961),367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 86 Ohio Law Abs. 513, whensuch evidence is obtained as a result of an illegal arrest,search or seizure. In reviewing a trial court's ruling on amotion to suppress, we accept the trial court's findings of fact"if they are supported by competent, credible evidence." Statev. Retherford (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498.Accepting these facts as true, we must then independentlydetermine, as a matter of law and without deference to the trialcourt's conclusion, whether these facts meet the applicable legalstandard. Id."
 {¶ 6} State v. Williams, Cuyahoga App. No. 81364, 2003-Ohio-2647, at ¶ 7.
 {¶ 7} In the case at bar, defendant maintains that even though Martin's initial stop may have been proper, he, nonetheless, had no authority to have him exit his vehicle and then pat him down.
 {¶ 8} The seminal case is Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889, in which the United States Supreme Court held that under the Fourth Amendment to the U.S. Constitution, the police have a right to perform a protective search of a person who has been lawfully stopped and whom they believe is armed and dangerous.
 {¶ 9} "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id., at 27. In determining whether a protective search is justified and an officer's belief reasonable, courts apply an objective standard based on the totality of circumstances. State v. Andrews (1991),57 Ohio St.3d 86, 89, 565 N.E.2d 1271, citing Terry, 392 U.S. at 27. Id. "To allow such a search based on anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than an inarticulate hunch." State v.Lozada (2001), 92 Ohio St.3d 74, 748 N.E.2d 520, syllabus.
 {¶ 10} The totality of the circumstances, includes some of the following factors:
 {¶ 11} "1) whether the location of the contact is an area ofhigh crime or high drug activity; 2) the suspect's non-compliancewith the officer's orders; 3) the time of the occurrence 4) theofficer's experience; 5) the lack of backup for the officer; 6)the contact's location away from the police cruiser; 7) whetherthe suspect is fleeing the officer or the scene; 8) any furtivemovements by the suspect; 9) the precautionary measures taken bythe officer; and 10) the suspected offense. (Citationsomitted)."
 {¶ 12} State v. Stiles, Ashtabula App. No. 2002-A-0078, 2003-Ohio-5535,
 {¶ 13} 2003 Ohio App. LEXIS 4960, at * ¶ 17. An officer need not testify he was actually in fear of a suspect, but he must articulate a set of particular facts which would lead a reasonable person to conclude a suspect may be armed and dangerous. State v. Evans, 67 Ohio St.3d 405, 1993-Ohio-186,618 N.E.2d 162.
 {¶ 14} Requiring an officer to describe the specific facts which led him to believe a protective search of a person was warranted ensures that such searches are not used as a pretext to search for contraband Id. Further, an officer is not permitted to conduct a search merely for convenience or simply as "part of his or her normal routine or practice." Stiles, citing Statev. Lozada, 92 Ohio St.3d 74, 77.
 {¶ 15} We underscore the United States Supreme Court's observation that "even a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." Lozada, at 79, citing Terry, 392 U.S. at 24-25, 88 S.Ct. at 1881-1882,20 L.Ed.2d at 908. At the suppression hearing in this case, Martin was questioned about the type of drug activity he looks for during his surveillance:
 {¶ 16} "Q: What types of activities do you look for whenyou're doing surveillance that would be indicative to you of sometype of drug activity?
 {¶ 17} A: Hand to hand transactions on high drug activitycorners, car to car transactions with — we know most of the drugdealers in the area. So if we see them making transactions fromtheir car to another car, we would be suspicious."
 {¶ 18} Tr. 15.
 {¶ 19} Martin further explained that when he first saw defendant, he observed him slow his car at the corner of E. 105th and Columbia. Standing at that corner were two men Martin had arrested in the past for dealing drugs.
 {¶ 20} Martin stated that at the time "I didn't know if he was going to make a buy, maybe make a sell. I didn't know what he was going to do." Tr. 19. Martin drove around the block so that he could hide his police cruiser and watch. When he could see the corner again, defendant and his car were gone. Approximately one hour later, Martin saw defendant's car again in the same vicinity. This time, there were three unidentified pedestrians walking on the sidewalk. Martin described what happened next:
 {¶ 21} "Q: And did you at that time see the defendant engagein any conversation with those males?
 {¶ 22} A: No, sir, but he did slow his car down enough toimpede the traffic that was behind him. I don't know if he had aconversation or what, but he slowed down for the three males. Ididn't see a transaction, anything said, but he did slow down.
 {¶ 23} * * *
 {¶ 24} Q: And how long did that take that he actually slowedhis vehicle down in front of those males?
 {¶ 25} A: Maybe three to five seconds.
 {¶ 26} * * *
 {¶ 27} Q: Did you see whether the pedestrians, the three guysthat were on the sidewalk, did you see what, if anything, theydid?
 {¶ 28} A: They turned and looked at his car. I don't know ifhe had said anything to them or if they were just wondering whyhe was slowing down, but I didn't hear them say anything, butthey did direct their attention to his car.
 {¶ 29} * * *
 {¶ 30} Q: Did they stop walking or did they keep walking?
 {¶ 31} A: They continued walking.
 {¶ 32} * * *
 {¶ 33} Q: Now, at this point in time, Officer, you made atraffic stop of the defendant's vehicle; is that correct?
 {¶ 34} A: Yes, about two more blocks south.
 {¶ 35} Q: Do you then continue to follow this car; is thatcorrect?
 {¶ 36} A: I was suspicious that maybe he was involved in somedrug activity, so I would have followed him further, but I was aone man. I knew Officer Haggerty was only a block away, so Iwanted to stop him at that point where I had some backup nearby.
 {¶ 37} Q: So you then made a traffic stop. And whatspecifically did you stop him for?
 {¶ 38} A: I stopped him for impeding the flow of traffic whenhe had slowed for the three individuals. The car that was betweenmy car and his car had to slow down."
 {¶ 39} Tr. 23-26.
 {¶ 40} When Martin approached defendant sitting in his vehicle, he requested his driver's license and proof of insurance. Defendant produced both items without objection. Martin then asked to search defendant's car. Again, defendant complied without objection. After defendant exited his car, Martin frisked him and found a bag of crack cocaine hidden in his pants' waistband area.
 {¶ 41} On the record before this court, we are unable to locate an objective basis, from the totality of the circumstances, justifying Martin's search of defendant's person. Granted, defendant was in an area of illegal drug activity and Martin is an experienced police officer. However, there is no evidence that defendant was, at any time, armed or otherwise dangerous. Defendant politely complied with every request Martin made. The events Martin described occurred in broad daylight and Martin knew he had police backup nearby. Defendant never made any attempt to flee the scene, nor did he ever demonstrate any of the conduct Martin testified he specifically looks for while doing surveillance.
 {¶ 42} Under Terry and the other cases in which the Ohio Supreme Court has applied Terry, supra., we conclude there is no objective basis justifying Martin's detention and search of defendant. There is absolutely no evidence that defendant was dangerous or involved in any crime of violence, which is the type of activity Terry requires to justify a detention and frisk. Without a reasonable suspicion of dangerousness, Martin's search of defendant was illegal and the drugs he seized as a result of that wrongful search should have been excluded by the court.
 {¶ 43} Accordingly, we hold that the trial court erred in denying defendant's motion to suppress. Defendant's sole assignment of error is sustained and this case is remanded for an immediate order vacating defendant's convictions.
Judgment reversed and remanded.
This cause is vacated and remanded.
It is, therefore, ordered that appellant recover of appellee his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., concurs.
 Celebrezze, Jr., J., dissents with separate dissentingopinion.
[1] Defendant was charged with one count of possession of drugs in violation of R.C. 2925.11.
[2] The second count of the indictment charged defendant with one count of Drug Trafficking in violation of R.C. 2925.03.
[3] A traffic offense in violation of Cleveland Municipal ordinance 433.04.
 DISSENTING OPINION