DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Dominique Mendoza, appeals the September 21, 2005 judgment entry of the Perrysburg Municipal Court denying his motion to suppress, and the October 26, 2005 judgment entry finding appellant guilty of operating a motor vehicle while under the influence of alcohol and/or drugs, R.C. 4511.19(A)(2). For the reasons set forth herein, we find that the trial court did not err when it denied appellant's motion to suppress.
 {¶ 2} On May 15, 2005, at approximately 2:30 a.m., appellant was stopped for speeding, in violation of R.C. 4511.21(C), in Lake Township, Wood County, Ohio. As a result of the traffic stop, appellant was also charged with operating a vehicle under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a) and (A)(2). Appellant entered a not guilty plea to the charges.
 {¶ 3} On July 29, 2005, appellant filed a motion to suppress all evidence against him that was acquired as a result of an unconstitutional stop. Appellant argued that there was no reasonable articulable suspicion to stop appellant for speeding or, alternatively, to believe that appellant was intoxicated. Next, appellant argued that he was subjected to custodial interrogation in violation of Miranda v.Arizona (1966), 384 U.S. 436. Finally, appellant argued that the field sobriety tests were not conducted in substantial compliance with the National Highway Transportation Safety Administration's ("NHTSA") guidelines. The state opposed the motion.
 {¶ 4} On August 29, 2005, a hearing was held on appellant's motion to suppress. During the hearing the state presented the testimony of Ohio State Highway Patrol Sergeant Matthew Meredith who testified regarding the calibration procedure and history for the Alco Sensor III, the preliminary breath tester ("PBT") or field testing device used during appellant's stop. Sergeant Meredith also testified regarding the evidentiary value of such a device; Meredith stated that the Alco Sensor III is on the NHTSA's approved instrument list.
 {¶ 5} Arresting officer, Ohio State Highway Patrol Trooper Jason Eiden testified next. Trooper Eiden testified that on May 15, 2005, at approximately 2:30 a.m., he stopped appellant for speeding (53 m.p.h. in a 35 m.p.h. zone.) Trooper Eiden approached the vehicle and asked appellant for his driver's license and registration. Appellant had his driver's license but he stated that his registration was at home. Eiden testified that appellant's movements were slow or "lethargic," that there was an odor of alcohol coming from appellant, and that appellant's eyes were bloodshot and glassy.
 {¶ 6} Trooper Eiden then asked appellant to come back to his police cruiser so he could verify the vehicle registration. Eiden testified that when appellant exited the vehicle he noticed a bulge in his right pants pocket. Concerned that appellant had a weapon, Trooper Eiden conducted a pat-down. Appellant indicated to him that it was just his cell phone.
 {¶ 7} Once in the police cruiser, with appellant in the front passenger seat, Trooper Eiden radioed to get appellant's driving information. The vehicle was, in fact, registered to appellant and it was discovered that appellant had a 2003 OVI conviction. Trooper Eiden stated that while he was speaking with appellant, the odor of alcohol became more evident. Eiden asked appellant if he had been drinking or if he had been around people who were drinking. Appellant stated that he had not been drinking but that he was at a party where others had been drinking.
 {¶ 8} Trooper Eiden testified that he asked appellant to submit to the horizontal gaze nystagmus ("HGN") test. While in the police cruiser, Eiden had appellant turn and square his shoulders towards him. Eiden detailed the testing process and testified that appellant displayed all six clues which would indicate that he was under the influence of alcohol.
 {¶ 9} Next, Trooper Eiden had appellant exit the cruiser to perform the one-leg stand and walk-and-turn tests. Trooper Eiden testified that during the one-leg stand test appellant's balance and coordination were very poor. Eiden stated that appellant held his arms out from his sides and put his foot down five times. Eiden also stated that he instructed appellant that if he put his foot down to just pick it back up and continue counting; according to Trooper Eiden, the first three times appellant put his foot down he began counting over. Regarding the walk-and-turn test, Trooper Eiden stated that contrary to the instructions given, appellant stepped off the line one time, missed touching heel-to-toe three times, and took eight, instead of nine steps in the first set.
 {¶ 10} Following the above tests, Trooper Eiden asked appellant to submit to a PBT which registered at .180. At that point appellant was placed under arrest for OVI. At the end of Trooper Eiden's direct examination, the videotape of the stop was played and admitted into evidence.
 {¶ 11} During cross-examination, Trooper Eiden was questioned regarding why he did not initially ask if appellant had been drinking. Eiden responded that he did not wish to create a confrontational situation. Eiden further stated that if he saw no signs of impairment he would have allowed appellant to wait in his vehicle while checking his driving record and vehicle registration. Trooper Eiden testified that appellant was very calm and cooperative during the traffic stop.
 {¶ 12} Regarding the field sobriety tests, Trooper Eiden was questioned about conducting the HGN test in the front seat of his police cruiser; he indicated that he conducts the test in the vehicle unless the driver objects. Eiden was also questioned regarding the scientific reliability of the PBT; Eiden responded that he did not know. Trooper Eiden was also questioned about the manner in which he instructed appellant to conduct the one-leg stand and walk-and-turn tests. Following the hearing, the parties submitted supplemental memoranda.
 {¶ 13} On September 21, 2005, the trial court denied appellant's motion to suppress. On October 24, 2005, appellant entered a no contest plea and he was found guilty. Appellant was sentenced to serve 180 days in the Wood County Justice Center, with 160 suspended, he was required to undergo an alcohol assessment, his license was suspended for three years, and he was fined $400. A stay of execution as to the incarceration was granted pending the outcome of this appeal.
 {¶ 14} Appellant now raises the following three assignments of error:
 {¶ 15} "First Assignment of Error
 {¶ 16} "The trial court erred to the prejudice of appellant by denying his motion to suppress as the facts supporting its decision are against the manifest weight of the evidence.
 {¶ 17} "Second Assignment of Error
 {¶ 18} "The trial court erred by denying appellant's motion to suppress as the evidence against him was obtained in violation of hisFourth and Fourteenth Amendment rights secured by the United States Constitution and Article I, Sections 10 and 14 of the Ohio Constitution.
 {¶ 19} "Third Assignment of Error
 {¶ 20} "The trial court erred in overruling appellant's motion to suppress by finding that probable cause existed to arrest appellant for operating a motor vehicle while under the influence of alcohol."
 {¶ 21} Prior to addressing the merits of appellant's assignments of error we must resolve the parties' dispute regarding the proper standard of review of a trial court's judgment on a motion to suppress. In his merit brief, appellant asserts that the manifest weight standard of review applies to the trial court's findings of fact.
 {¶ 22} Unlike a manifest weight of the evidence standard, this court's role is not to assess the trial court's resolution of any conflicts in the evidence; rather, as stated by appellant, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. See State v. Guysinger (1993), 86 Ohio App.3d 592, 594. Thereafter, an appellate court must independently determine, without deferring to a trial court's conclusions, whether, as a matter of law, the facts meet the applicable standard. State v. Klein (1991),73 Ohio App.3d 486, 488.
 {¶ 23} In appellant's first assignment of error he contends that the trial court's decision was not supported by competent, credible evidence because Trooper Eiden's testimony and the videotape of the stop do not support the court's decision. Appellant asserts that the trial court's decision erroneously stated that Trooper Eiden asked appellant if he had been drinking prior to appellant exiting his vehicle when, in fact, Eiden did not mention alcohol until appellant was in the police cruiser. Next, appellant contends that the fact that Trooper Eiden did not state on the videotape that the reason for the pat-down was a bulge he observed in appellant's right pants pocket was somehow inconsistent with Trooper Eiden's testimony and the court's finding.
 {¶ 24} Regarding the trial court's finding that Trooper Eiden asked appellant if he had consumed any alcohol while appellant was in his vehicle, we agree that the court's statement was not in the proper order. However, upon review of the transcript and the videotape we find that even absent the error, upon review of the totality of the circumstances credible evidence was presented to establish reasonable articulable suspicion to detain appellant. Trooper Eiden testified that he smelled an odor of alcohol coming from appellant, appellant's eyes were glassy and bloodshot, and appellant's movements were slow and deliberate. Further, with regard to Trooper Eiden's observation regarding the bulge in appellant's pocket, we must conclude that competent evidence is in the record to support the trial court's conclusion. Appellant's first assignment of error is not well-taken.
 {¶ 25} In appellant's second assignment of error, appellant argues that he was unlawfully detained when Trooper Eiden conducted a pat-down search and placed him in the police cruiser. In support of this contention, appellant relies on the Supreme Court of Ohio case captionedState v. Lozada (2001), 92 Ohio St.3d 74.
 {¶ 26} In Lozada, the court held that "[d]uring a routine traffic stop, it is unreasonable for an officer to search the driver for weapons before placing him or her in a patrol car, if the sole reason for placing the driver in a patrol car during the investigation is for the convenience of the officer." Id. at paragraph two of the syllabus. InLozada, the driver was initially stopped for speeding. The officer asked Lozada to accompany him to his patrol car while he checked his license and registration. Prior to entering the vehicle, the officer asked Lozada whether he had any weapons on him; Lozada answered negatively but the officer conducted a pat-down and discovered cocaine. Id. at 75. At the suppression hearing, the officer testified that it was his standard practice to conduct a pat-down search of the driver and then place the driver in his patrol car. Id.
 {¶ 27} Finding that the pat-down search was not justified, the court noted that "[w]hile the intrusion of asking a driver to sit in a patrol car to facilitate a traffic stop may be relatively minimal, the level of intrusion on the driver dramatically increases when the driver is subject to a pat-down search for weapons before entering the patrol car." Id. at 76. The court opined that if this were permissible it could act to turn every traffic stop into a Terry stop. Id. at 77.
 {¶ 28} Lozada next addressed the propriety of the placement of the driver in the patrol car. The court, citing State v. Evans (1993),67 Ohio St.3d 405, stated that if the officer has a "legitimate and lawful" reason to detain the driver in his patrol car, then the officer is justified in conducting a pat-down search of the driver prior to placing him or her in the patrol car. Id. In Evans, the driver's failure to produce his driver's license was a lawful reason to place in the patrol car. Id. at 78. Thus, Lozada provides that a patdown is justified where the officer has a legitimate reason, other than convenience, for having the driver sit in the patrol car; or, the pat-down may be proper where the officer has a reasonable belief that the driver is armed.
 {¶ 29} In the instant case, Trooper Eiden testified that appellant produced his driver's license but indicated that he did not have his vehicle registration. Prior to asking appellant to exit the vehicle Trooper Eiden smelled an odor of alcohol, observed that appellant had bloodshot, glassy eyes, and observed that appellant's movements were slow. Once appellant exited the vehicle Trooper Eiden noticed a bugle in appellant's right pants pocket which immediately altered him to the fact that it might be a weapon. Eiden then conducted a pat-down of appellant prior to having him sit in the cruiser. Eiden testified that he would have allowed appellant to remain in his vehicle if he had not observed signs of alcohol impairment. Finally, Trooper Eiden testified that he had appellant sit in the front seat of the cruiser and that the doors were unlocked.
 {¶ 30} Based on the foregoing, we find that Trooper Eiden's pat-down of appellant and request that he sit in the front seat of the police cruiser did not violate appellant's Fourth and Fourteenth Amendment rights. Appellant's second assignment of error is not well-taken.
 {¶ 31} In his final assignment of error, appellant argues that the trial court erroneously denied his motion to suppress because, upon review of the totality of the circumstances, Trooper Eiden lacked probable cause to arrest appellant for OVI. Probable cause for a warrantless arrest is based on "* * * whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed the offense."Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142.
 {¶ 32} The basis of appellant's argument is that Trooper Eiden failed to comply with NHTSA guidelines when performing the field sobriety tests.
 {¶ 33} R.C. 4511.19(D)(4), effective July 2003, provides:
 {¶ 34} "(b) In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine, if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test insubstantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
"(i) The officer may testify concerning the results of the field sobriety test so administered.
"(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.
"(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate." (Emphasis added.)
The Supreme Court of Ohio has acknowledged that the amended statute permits field sobriety tests which have been conducted in substantial compliance with the testing standards to be admitted at trial. State v.Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, ¶ 9.
The court, construing Homan, concluded that even if the results of the tests are inadmissible, "[a] law enforcement officer may testify at trial regarding observations made during a defendant's performance of nonscientific standardized field sobriety tests." Id. at syllabus.
Regarding the HGN test, appellant contends that because Trooper Eiden did not testify that he was trained to administer the test from a seated position, the test results were inadmissible. In State v. Dohner, 11th Dist. No. 2003-P-0059, 2004-Ohio-7242, the court held that absent a specific requirement in the NTHSA manual that a driver must be standing, the results of the HGN test are admissible provided that the officer was properly trained to administer the test and testified that his actions complied with his training. Id., ¶ 13.
 {¶ 35} In the instant case, upon review of the NHTSA manual admitted into evidence we find no requirement that the HGN test must be performed while the driver is standing. Further, as in Dohner, Trooper Eiden testified regarding his training and experience in administering the test; Eiden also testified regarding the HGN test he performed on appellant. Accordingly, we find that the results of the HGN test were admissible.
 {¶ 36} Regarding the one-leg stand and the walk-and-turn tests, appellant argues that Trooper Eiden's instructions failed to conform to the NHTSA guidelines. The NHSTA manual divides each of the above tests into two parts: the driver's performance during the instruction stage and his performance during the active test stage. The one-leg stand instruction stage provides: "In the instruction stage the subject must stand with feet together, keep arms at sides, and listen to instructions." The walk-and-turn instructions stage similarly provides: "In the instructions stage, the subject must stand with their feet in heel-to-toe position, keep their arms at their sides, and listen to the instructions."
 {¶ 37} After review of the one-leg stand instructions, we find that there was substantial compliance with the NHTSA guidelines; however, with regard to the walkand-turn test instructions, Trooper Eiden admitted that he did not have appellant keep his arms down at his sides and stand still while listening to the instructions. Eiden also admitted that he "marked" appellant for moving his feet while listening to the instructions. Because the walk-and-turn instruction stage was not conducted in substantial compliance with the NHTSA guidelines the test results were not admissible; however, Trooper Eiden's testimony regarding his observations was permitted.
 {¶ 38} Upon review of the content of the instructions for the one-leg stand given by Trooper Eiden, we find that Eiden improperly instructed appellant that if he needed to put his foot down at any time to just pick it back up and continue counting. The manual states: "If the suspect puts the foot down, give instructions to pick the foot up again and continue counting from the point at which the foot touched the ground." Eiden's instruction could have been interpreted to mean that putting a foot down was permissible; appellant put his foot down five times. Accordingly, Trooper Eiden could testify only with regard to his observations during the testing.
 {¶ 39} During the one-leg stand and walk-and-turn tests, Trooper Eiden testified that he observed that appellant had poor balance and coordination. Appellant also had difficulty following the instructions that were given and that his counting was very slow, "much slower than what [Eiden] would normally notice."
 {¶ 40} Lastly, appellant argues that because the PBT is no longer recognized by the Ohio Department of Health, it may not serve as probable cause to arrest an individual for OVI. Upon review we find that the totality of Eiden's observations, even absent the PBT test, was sufficient to establish probable cause that appellant was driving under the influence of alcohol. Trooper Eiden's testimony provided that appellant was stopped for speeding at 2:30 a.m., that he had an odor of alcohol and bloodshot, glassy eyes, that appellant's movements were slow or "lethargic," that Eiden observed six of the six clues during the HGN test, and that appellant's coordination and balance were poor and the he was not able to comply with the instructions that were given. Accordingly, because Trooper Eiden had probable cause to arrest appellant for OVI, we find that appellant's third assignment of error is not well-taken.
 {¶ 41} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Perrysburg Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, J.
Arlene Singer, P.J.
William J. Skow, J.
CONCUR.