[Cite as *State v. Camp*, 2015-Ohio-329.]

[Please see Vacated Opinion 2014-Ohio-4498]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| | : | *NUNC PRO TUNC* |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| SUE ELLEN CAMP | : | |
| | : | |
| Defendant-Appellee | : | CASE NO. 14CA42 |

This matter comes before the Court, sua sponte. Upon review, we find a reference in the Memorandum-Opinion filed October 9, 2014 at ¶8; ¶4 and ¶31 were scrivener's errors. Accordingly, this Court corrects the October 9, 2014 Opinion. Therefore, this nunc pro tunc judgment entry along with a nunc pro tunc opinion and judgment entry shall be filed in this matter to correct the error.

IT IS SO ORDERED.

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. CRAIG R. BALDWIN

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
| -vs- | : |  |
|  | : |  |
| SUE ELLEN CAMP | : | Case No. 14CA42 |
|  | : |  |
| Defendant-Appellee | : |  |
|  | : | *NUNC PRO TUNC* O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal appeal from the Richland County
Court of Common Pleas, Case No.
2014CR105R


JUDGMENT:    Reversed and Remanded


DATE OF JUDGMENT ENTRY:    January 28, 2015


APPEARANCES:

For Plaintiff-Appellant                    For Defendant-Appellee

JILL COCHRAN                          WILLIAM FITHIAN III
Assistant Prosecuting Attorney        111 N. Main Street
38 South Park Street                   Mansfield, OH 44902
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Plaintiff-appellant the State of Ohio appeals the May 5, 2014 Judgment Entry of the Richland County Court of Common Pleas granting defendant-appellee Sue Ellen Camp's motion to suppress.

*Facts and Procedural History*

{¶2} On February 10, 2014, Camp was indicted with one count of possession of heroin, in violation of R.C. § 2925.11(A) & (C)(6)(a), a felony of the fifth degree. On March 17, 2014, Camp filed a motion to suppress the evidence arguing that because the officers did not have any reason to believe that Camp posed a threat to any of the officers at the scene, the search of her person was unconstitutional.

{¶3} An evidentiary hearing on Camp's motion to suppress was held on April 28, 2014. Two witnesses were called to testify.

**A. Sergeant Carroll.**

{¶4} On November 20, 2013, Sergeant Ken Carroll with the Mansfield City Police Department was working second shift, from two o'clock to ten o'clock p.m., as shift supervisor. He was dressed in uniform and was driving a marked vehicle. Sergeant Carroll was in the area of Bowman and Vale near a known drug house when he observed a white minivan. Sergeant Carroll testified to the location of the van at the time he first noticed it,

> If you turn onto Vale there's an alley off to the left. It was in that area by the new Family Dollar, right in that area.

T. at 6. Sergeant Carroll testifed he noticed a female walk toward the van, but he did not see her get into the van. T. at 6. Sergeant Carroll followed the van for approximately two

miles when he observed the van commit a traffic violation. Upon running the license plates, Sergeant Carroll learned that the vehicle's owner was driving under suspension. He initiated a traffic stop. Three occupants were seated inside the van. A female driver and a male passenger were in the front seat and Camp was in the back seat.

{¶5} After running the identification of the driver, it was determined that she was driving under suspension and had an active felony warrant for her arrest. The driver was removed from the vehicle, arrested and placed in Sergeant Carroll's cruiser. The passengers were told to relax as Sergeant Carroll noted them to appear nervous.

{¶6} Officer Reed, who was a probationary officer in the field, arrived with his trainer, Officer Butler who was dressed in plain clothes. Sergeant Carroll also called for a drug dog, which arrived later with Officer Sarah Mosier-Napier. Camp and the male passenger were not removed from the car at that time; however, checks of their identities were started. Either while the drug dog was en route or after the drug dog had arrived, the passengers were removed from the vehicle. Sergeant Carroll testified that this is done for any kind of a free-air canine sniff of a vehicle to prevent the vehicle occupants from opening the door during the search and the canine from jumping into the vehicle.

{¶7} Once Camp was removed from the vehicle, a pat-down was performed on her for officer safety. Sergeant Carroll testified Patrol officer Reed patted Camp down and found nothing on her person. Camp was placed in the back of Patrol Officer Reed's cruiser. The male passenger was on the sidewalk with Patrol Officer Butler.

{¶8} Subsequently, the canine alerted on a coat that was located in the vehicle's back seat where Camp was sitting. Drug scales were located in the coat

pocket. Camp was arrested for possessing the drug scale. Sergeant Carroll further testified Patrol officer Mosier-Napier searched Camp and found a loaded heroin syringe hidden in her pants pocket.

**B. Officer Sara Mosier- Napier.**

{¶9}   Patrol officer Mosier-Napier is a canine officer for the Mansfield Police Department. Patrol officer Mosier-Napier said she was called by Sergeant Carroll to come to the scene of the car stop to have her canine perform a free air sniff around the vehicle.

{¶10}  Patrol officer Mosier-Napier could not recall whether Camp and the male passenger had been taken out of the van before she arrived. Prior to removing her canine from the cruiser, Patrol officer Mosier-Napier testifed,

> I patted her [Camp] down for officer safety. I say the same thing to every single person, do you have a problem with me putting my hands in your pockets? Do you have anything illegal that I need to know about, anything that's going to poke me, stick me? That's where it started.

> * * *

> Yeah. She consented to a search of her person, which means obviously anything on her person. She had a loaded heroin syringe hidden down her pants.

T. at 33-34.

{¶11}  The state did not present any other evidence. Camp did not offer any evidence or call any witnesses.

{¶12} By Judgment Entry filed May 5, 2014, the trial court granted Camp's motion to suppress finding "the State of Ohio has failed to produce articulable facts and circumstances to believe that the defendant was either armed and dangerous or engaged in criminal activity."

*Assignment of Error*

{¶13} The state raises one assignment of error,

{¶14} "I. THE TRIAL COURT ERRED WHEN IT GRANTED THE APPELLEE'S MOTION TO SUPPRESS."

*Analysis*

{¶15} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist.1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002);

*Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

{¶16} In the case at bar, the parties agree that the car in which Camp was a passenger was lawfully stopped for a traffic violation. The parties further agree that Sergeant Carroll could lawfully order Camp to get out of the car during the investigatory traffic stop. In the case at bar, the trial court found, however, that the officers conducted a warrantless search without having a reasonable suspicion that she may be armed and, thus, dangerous to the police officer and others.

## A. *Terry* pat-down protective search.

{¶17} Authority to conduct a pat down search does not flow automatically from a lawful stop and a separate inquiry is required. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Fourth Amendment requires an officer to have a "reasonable fear for his own or others' safety" before frisking. Id. Specifically, "[t]he officer ... must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" United *States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), *citing Terry, supra*, 392 U.S. at 27. Whether that standard is met must be determined from the standpoint of an objectively reasonable police officer, without reference to the actual motivations of the individual officers involved. *United States v. Hill,* 131 F.3d 1056, 1059 (D.C.Cir.1997), *citing Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶18} In *State v. Lozada*, 92 Ohio St.3d 74, 2001–Ohio–149, 748 N.E.2d 520, the Ohio Supreme Court had the opportunity to discuss detentions and searches similar to the one in the case at bar. In *Lozada*, an Ohio State Trooper stopped a vehicle for speeding, and asked the driver to exit his vehicle. Even though the driver denied having any weapons, the trooper patted him down and found two small bags of cocaine.

{¶19} The Supreme Court found the initial traffic stop was proper, and the issue presented was whether it was reasonable to search the appellant for weapons and place him in a patrol car. The Supreme Court found whether an officer may pat a person down before placing him in a vehicle depends upon the legitimacy of placing him in the police car in the first place, *Lozada* at 523, *citing People v. Kinsella*, 139 A.D.2d 909, 527 N.Y.S.2d 899(1988). The *Lozada* court noted numerous courts have held an officer may ask a driver to sit in his or her patrol car to facilitate the traffic stop, but the question of whether the driver may be searched for weapons before entering the patrol car is more problematic. In *Lozada*, the court found the placement of a driver in a patrol car during a routine traffic stop may be constitutionally permissible, but may not be used simply to justify a search of the driver. The intrusion of asking a driver to sit in a patrol car to facilitate a traffic stop may be relatively minimal, but the level of intrusion dramatically increases when the person is subject to a pat-down search for weapons before entering the patrol car. The Supreme Court found this violates the requirement of specific and articulable belief an individual is armed and dangerous first set forth in *Terry v. Ohio*, 392 U.S. 1, 88 Sup.Ct. 1868, 20 L.Ed.2d 889 (1969).

{¶20} The *Lozada* court held it is unreasonable for an officer to search a driver for weapons before placing him or her in a patrol car if the sole reason for placing the

driver in the patrol car during the investigation is for the convenience of the officer. The Supreme Court found, however, it is reasonable to place a driver in a patrol car and even subject him or her to a pat-down search for weapons where placement of the person in the patrol car is justified to protect the officer or the driver from dangerous conditions, *Lozada* at 525, citations omitted. The court gave the example of a hostile crowd threatening the officer and the driver, as an example of a dangerous condition necessitating the placement of the driver into the patrol car. Ultimately, the court concluded that no dangerous condition existed and that the state trooper's search of the defendant for weapons before placing him in the patrol car was unreasonable. Id. at 81. *Accord, State v. Scarbury*, Fifth Dist. Knox No. 03CA000016, 2003-Ohio-6483, ¶¶15-17.

{¶21} In the case at bar, both Sergeant Carroll and Patrol Officer Mosier-Napier testified that a protective *Terry* pat down was conducted when Camp was removed from the van. (T. at 10; 22-23; 24; 33). However, they further testified that the pat down search revealed no incriminating evidence. Sergeant Carroll testified that Officer Reed performed the pat down search of Camp after she was removed from the van. (T. at 22; 24-25). Patrol Officer Mosier-Napier testifed that her pat down did not reveal any incriminating evidence. (T. at 36-37). However, she further testified that contemporaneously with the pat down search Patrol Officer Mosier-Napier asked for and was given consent to search Camp's person. (T. at 36-38; 42).

### B. Consent to search.

{¶22} One well-established exception to the warrant requirement is the consent search. No Fourth Amendment violation occurs when an individual voluntarily consents to a search. See *United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105, 153

L.Ed.2d 242(2002) (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854(1973) ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); *State v. Comen*, 50 Ohio St.3d 206, 211, 553 N.E.2d 640(1990). In *Schneckloth*, the United States Supreme Court acknowledged the importance of consent searches in police investigations, noting that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a criminal. Id. at 227–228. *See, also, State v. Fry*, 4th Dist. No. 03CA26, 2004–Ohio–5747, ¶ 18.

{¶23} The United States Supreme Court further noted, "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *I.N.S. v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247(1984); *Drayton*, *supra*, 536 U.S. at 205, 122 S.Ct. at 2113. Moreover, a voluntary consent need not amount to a waiver; consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." *Schneckloth v. Bustamonte*, 412 U.S. 218, 235, 93 S.Ct. 2041, 36 L.Ed.2d 854(1983), (*quoting Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1464(1938)); *State v. Barnes*, 25 Ohio St.3d 203, 495 N.E.2d 922(1986); *State v. McConnell*, 5th Dist.Stark No.2002CA00048, 2002–Ohio–5300, ¶ 8. Rather, the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. Id. Further, "[v]oluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search." *State v. Robinette*, 80 Ohio St.3d 234, 241, 685

N.E.2d 762(1997), *citing United States v. Davis*, 328 U.S. 582, 593–594, 66 S.Ct. 1256, 90 L.Ed. 1453(1946). The voluntariness of a consent to a search is a question of fact and will not be reversed on appeal unless clearly erroneous. *State v. Clelland*, 83 Ohio App.3d 474, 615 N.E.2d 276 (4th Dist .1992).

{¶24} In *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762(1997), the Supreme Court noted,

> We find *Bustamonte* instructive in defining when permission to search is truly consensual under the totality of the circumstances:

> "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." Id., 412 U.S. at 248–249, 93 S.Ct. at 2059, 36 L.Ed.2d at 875.

80 Ohio St.3d at 242–243, 685 N.E.2d at 769. The burden of proving that the suspect voluntarily consented to the search rests upon the prosecution. *Schneckloth, supra*; *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797(1968); *State v. Hassey*, 9 Ohio App.3d 231, 459 N.E.2d 573(10th Dist.1983); *State v. Pi Kappa Alpha Fraternity*, 23 Ohio St.3d 141, 491 N.E.2d 1129(1986). The state's burden is not

satisfied by showing a mere submission to a claim of lawful authority. *Robinette*, 80 Ohio St.3d at 243, 685 N.E.2d at 770.

**{¶25}** In the case at bar, the trial court made no mention of Camp's consent to search in the Judgment Entry granting Camp's motion to suppress. A review of the record indicates that Camp was not placed under arrest nor was she handcuffed. Patrol Officer Mosier-Napier asked permission to search Camp's pockets. Camp was not threatened or made any promises to obtain her consent. Camp was being temporarily detained for a check of her identification as a result of the driver's arrest for the traffic violation and driving under suspension. In the case at bar, Camp did not contend that she was coerced into consenting to the search of her person.

**{¶26}** We find the evidence produced during the hearing on Camp's motion to suppress leads to the conclusion that Camp's consent was in fact voluntarily given.

### C. Inevitable Discovery.

**{¶27}** In 1985, the Supreme Court of Ohio adopted the inevitable discovery exception to the exclusionary rule. *State v. Perkins*, 18 Ohio St.3d 193, 480 N.E.2d 763(1985). The Supreme Court held:

> that illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation. The prosecution will have the burden to show within a reasonable probability that police officials would have discovered the derivative evidence apart from the unlawful conduct.

18 Ohio St.3d at 196, 480 N.E.2d 763; See, also, *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377(1984).

**{¶28}** In the case at bar, the evidence reveals that the officers inevitably would have discovered the syringe in Camp's pocket.

**{¶29}** Sergeant Carroll testified that he had called for a canine to do a free air walk around of the van after he learned the driver had an active warrant. (T. at 9-10; 18; 27). He made the decision to call for the canine based upon the high-crime, high drug activity occurring in the area where the van was located. (T. at 27). The canine alerted on a child's coat in the backseat of the van. (T. at 17-18; 26-27). The coat was identified as belonging to Camp. (T. at 17- 18). The coat was found to contain drug paraphernalia. (T. 17; 27- 28). Camp was subject to arrest for the drug paraphernalia. (T. at 28).

**{¶30}** The use of a drug detection dog does not constitute a "search" and an officer is not required, prior to a dog sniff, to establish either probable cause or a reasonable suspicion that drugs are concealed in a vehicle. See *Illinois v. Caballes,* 543 U.S. 405, 409, 125 S.Ct. 834, 838, 160 L.Ed.2d 842(2005); *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110(1983); *State v. Carlson*, 102 Ohio App.3d 585, 594, 657 N.E.2d 591(9th Dist. 1995); *United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir. 1993). Further, if a trained narcotics dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband. *United States v. Reed,* 141 F.3d 644(6th Cir. 1998) (*quoting United States v. Berry,* 90 F.3d 148, 153(6th Cir. 1996), *cert. denied* 519 U.S. 999 (1996)); *accord, United States v. Hill*, 195 F.3d 258, 273(6th Cir. 1999); *United States v. Diaz,* 25 F.3d 392, 394(6th Cir. 1994); *State v. French*, 104 Ohio App.3d 740, 663 N.E.2d 367(12th

Dist. 1995*), abrogated on different grounds*, *City of Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091(1996).

**{¶31}** Sergeant Carroll had a reasonable suspicion of illegal drug activity. He could lawfully call for a police dog and wait for it to arrive to check for drugs based on this suspicion. Once the drug dog alerted to the van, the officers had probable cause to search that vehicle for contraband. No violation of Camp's Fourth Amendment rights has been demonstrated.

**{¶32}** After Camp's arrest, the officers would have properly performed a search incident to arrest. In contrast to a *Terry* search, a search incident to a lawful arrest permits an officer to,

> [C]onduct a full search of the arrestee's person, and that search is not limited to the discovery of weapons, but may include evidence of a crime as well." *State v. Jones*, 112 Ohio App.3d 206, 215, 678 N.E.2d 285(1996); *see, also, Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685(1969), (stating that when an officer conducts a search incident to arrest "it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction").

*State v. Mathews*, 46 Ohio St.2d 72, 74–75, 346 N.E.2d 151(1976).

**{¶33}** Consequently, because the officers would have arrested Camp and would have conducted a full search incident to arrest, the officers inevitably would have discovered the loaded heroin syringe in Camp's pocket.

*Conclusion*

**{¶34}** We find that the trial court incorrectly decided the ultimate or final issue raised in Camp's motion to suppress, and further that the trial court failed to apply the appropriate test or correct law to the findings of fact. *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172(8th Dist. 1994); *State v. Claytor*, 85 Ohio App.3d 623, 627, 620 N.E.2d 906(4th Dist. 1993); *State v. Guysinger*, 86 Ohio App.3d 592, 594, 621 N.E.2d 726(4th Dist. 1993); *State v. Bickel*, 5th Dist. Ashland No. 2006-COA-034, 2007-Ohio-3517, ¶32.

**{¶35}** We find no evidence in the record that Camp's consent was the result of duress or coercion, express or implied. We further find that because the officers would have arrested Camp for the drug paraphernalia and would have conducted a full search incident to arrest, the officers inevitably would have discovered the loaded heroin syringe in Camp's pocket.

{¶36} For the forgoing reasons, the judgment of the Richland County Court of Common Pleas, Ohio is reversed and this case is remanded for further proceedings consistent with this opinion.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur