[Cite as *State v. Cope*, 2025-Ohio-5321.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30457 |
| Appellee | : | |
| | : | Trial Court Case No. 2024 CR 00888 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| ALEXANDER COPE | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on November 26, 2025, the judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.


For the court,

RONALD C. LEWIS, JUDGE

HUFFMAN, J., and HANSEMAN, J., concur.

MONTGOMERY C.A. No. 30457

CHRISTOPHER BAZELEY, Attorney for Appellant
SARAH H. CHANEY, Attorney for Appellee

LEWIS, J.

{¶ 1} Defendant-Appellant Alexander Cope appeals from a judgment of the Montgomery County Common Pleas Court convicting him of aggravated possession of drugs following his no contest plea. Cope argues the trial court erred by overruling his motion to suppress evidence obtained after a pat-down of him during a traffic stop. For the following reasons, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

## I. Facts and Course of Proceedings

{¶ 2} On April 16, 2024, a Montgomery County grand jury indicted Cope on one count of aggravated possession of drugs (5 times bulk but <50 times bulk), a second-degree felony in violation of R.C. 2925.11(A). The indictment related to events that occurred on January 12, 2023, during a traffic stop of a vehicle in which Cope was a passenger. Cope pleaded not guilty.

{¶ 3} On May 17, 2024, Cope filed a motion to suppress evidence obtained from him during what he characterized as an unlawful stop, seizure, search, and detention. According to Cope, the sheriff's deputies who conducted the traffic stop expanded the scope of the stop without additional facts giving rise to reasonable suspicion of criminal activity beyond the driver's traffic violations.

{¶ 4} The suppression hearing was held on September 3 and October 4, 2024. Montgomery County Deputy Sheriff Travis Munn testified first at the suppression hearing.

2

On the night Cope was arrested, Deputy Munn was patrolling Far Hills Avenue in Washington Township. According to Deputy Munn, residents in that area had previously complained to the police that there had been drug activity at the residence located at 424 Colonial Lane. A week or two prior to January 12, 2023, deputies had recovered a firearm and narcotics during a traffic stop of a car that had left 424 Colonial Lane. Also, a stolen vehicle had been found in the driveway of that address.

{¶ 5} Deputy Munn assisted Sergeant Josh Evers with the January 12, 2023 traffic stop of the car in which Cope was a passenger. During the stop, Sergeant Evers asked Deputy Munn to remove the occupants from the vehicle in preparation for a canine sniff. Deputy Munn testified that due to the history of vehicles leaving the Colonial Lane address with firearms or narcotics, he patted the exterior of Cope's clothing for officer safety. While conducting the pat-down, Deputy Munn felt a large, weighted object between Cope's legs around his groin area. Deputy Munn was not sure what the object was and asked Cope what it was. Cope responded that it was a pad because he had defecated. Deputy Munn did not smell any human fecal matter, so he decided to handcuff Cope due to the large, weighted object in Cope's pants. Deputy Munn testified that the size and weight of the object and the history of the Colonial Lane address from which Cope had left caused him to handcuff Cope to ensure the safety of the officers and Cope. As Deputy Munn began to handcuff him, Cope volunteered that the object between his legs was meth.

{¶ 6} State's Exhibit 2 from the suppression hearing included video footage from Deputy Munn's body camera. The footage reveals that Deputy Munn ordered Cope out of the vehicle and told Cope he was going to pat Cope down. During the pat-down, Deputy Munn asked Cope what the object between his legs was. Cope responded, "It's my pad.

3

I shit myself.  I shit myself so I have to wear it."  Deputy Munn stated that Cope would be put in handcuffs "real quick."  Cope then immediately stated, "It's meth."

{¶ 7} State's Exhibit 3 from the suppression hearing included video footage from Deputy Sheriff Michael Arnett's body camera.  This video shows Cope admitted to possessing meth before he was completely handcuffed.

{¶ 8} Sergeant Evers with the Montgomery County Sheriff's Department testified next.  He had been employed there since 2002.  Sergeant Evers was patrolling the area near Colonial Lane during the evening of January 12, 2023.  He had been keeping a close eye on 424 Colonial Lane due to previous drug complaints by residents of that area and previous traffic stops that had led to the seizure of a handgun and illicit drugs.  Sergeant Evers noticed a Chevy Lumina in the driveway of 424 Colonial Lane with its lights on.  When the car pulled out of the driveway, Sergeant Evers saw that the car's license plate was displaying the previous year's sticker.  He followed the car and ran the license plates through his computer system.  Sergeant Evers witnessed the car making a left-hand turn onto State Route 48.  The turn signal of the car did not illuminate until 20-25 feet before the stop sign.  Therefore, Sergeant Evers initiated a traffic stop based on an invalid license plate sticker and a failure to signal 100 feet before a turn.  He requested that Deputy Arnett, a canine handler, respond to the location of the traffic stop to deploy his canine unit to conduct a free-air sniff.

{¶ 9} Sergeant Evers approached the vehicle and explained to the driver why a traffic stop was initiated.  While speaking with the driver, Sergeant Evers noticed that Cope was sitting in the front passenger seat playing a video game on his phone.  Sergeant Evers retrieved identification information from both occupants of the vehicle and returned to his police cruiser to run the information through the cruiser's computer system.  Sergeant Evers

4

reviewed notes on his cruiser's computer system indicating that the vehicle in the traffic stop had been involved in an incident with a Hispanic male armed with a gun.   He also reviewed a field interview note that stated Cope had previously been stopped leaving a "drug house."

{¶ 10} While Sergeant Evers was in his police cruiser, Deputy Arnett arrived and asked the occupants to exit the vehicle in preparation for the canine free-air sniff.   Sergeant Evers testified that the canine unit responded quickly to the scene and arrived while he was confirming the accuracy of the identity information given to him by the two occupants of the vehicle.   Both occupants stated that they did not have any guns, knives, or drugs.

{¶ 11} State's Exhibit 1 from the suppression hearing contained video footage from the body camera of Sergeant Evers.   This video shows Sergeant Evers discussing with Deputy Arnett how Sergeant Evers had seen the vehicle leaving a "dope house."   Sergeant Evers asked Deputy Arnett whether he wanted the occupants removed from the vehicle for the free-air sniff.   The deputy responded, "Oh yeah."   Sergeant Evers then instructed Deputy Arnett to "pull 'em out, pat 'em down, and we'll stick them in cars."   After further discussion, it was decided the occupants would not be placed in the police cruisers.

{¶ 12} Deputy Arnett testified last at the suppression hearing.   On the night Cope was arrested, Deputy Arnett was patrolling about five minutes away from the location of Sergeant Evers's traffic stop.   Deputy Munn arrived at the scene immediately after Deputy Arnett.   According to Deputy Arnett, it was the Montgomery County Sheriff Department's policy for a deputy to ask the occupants of a vehicle to step out of the vehicle and then pat them down prior to a canine sniff.   Deputy Arnett understood that Sergeant Evers had observed the vehicle coming from a location where there had been issues with drug activity, stolen vehicles, and stolen weapons.   Deputy Arnett assisted with removing the driver from the vehicle and asked her to show him what was in her pockets.   Deputy Munn assisted in

5

removing Cope from the passenger seat and patted him down. Deputy Arnett believed Cope had consented to the pat-down and that this consent would have been captured by Deputy Munn's body camera. During the pat-down, Deputy Munn asked Cope about the object near his buttocks, and Cope stated that he had defecated. Deputy Arnett did not smell anything despite being only two feet away from Cope.

{¶ 13} On October 30, 2024, the trial court overruled Cope's motion to suppress. The trial court made the following findings of fact: (1) the deputies were permitted to remove Cope from the vehicle for a free-air sniff and to pat Cope down for weapons for officer safety; (2) Deputy Munn did not immediately know what the object was in Cope's pants; and (3) while being placed in handcuffs for officer safety, Cope volunteered that the object in his pants was meth. The trial court concluded, "There is no evidence any of the officers engaged in any coercive activity; there were no threats or promises made, and all three officers maintained a pleasant demeanor throughout their interactions with [Cope]. Accordingly, [Cope]'s confession that the item in his pants was meth was voluntary." Decision (Oct. 30, 2024), p. 12.

{¶ 14} Cope subsequently changed his plea from not guilty to no contest. The trial court found him guilty of aggravated possession of drugs and sentenced him to a minimum prison term of two years and a maximum prison term of three years. Cope filed a timely notice of appeal from the trial court's judgment.

II. **The Trial Court Erred in Overruling Cope's Motion to Suppress**

{¶ 15} Cope's assignment of error states:

THE TRIAL COURT ERRED WHEN IT OVERRULED COPE'S MOTION TO SUPPRESS.

6

{¶ 16} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." *State v. Brooks*, 75 Ohio St.3d 148, 154 (1996), citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *Fanning* at 20. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 10 (4th Dist. 1997).

{¶ 17} The propriety of the initial stop of the vehicle in which Cope was a passenger is not at issue in this appeal. The suppression hearing testimony, indicating that the vehicle was pulled over for an expired license plate sticker and failure to activate a turn signal within 100 feet of a turn, is uncontroverted and served as the lawful basis for the stop. The focus of our inquiry, therefore, is on the order that Cope exit the vehicle and on the ensuing pat-down search for weapons.

{¶ 18} The United States Supreme Court has held that a police officer may order a motorist to get out of a car that has been properly stopped for a traffic violation, even without suspicion of criminal activity. *Pennsylvania v. Mimms*, 434 U.S. 106 (1977). "What is now referred to as a '*Mimms* order' was viewed by the court as an incremental intrusion into the driver's personal liberty which, when balanced against the officer's interest in protection against unexpected assault by the driver and against accidental injury from passing traffic, is reasonable under the Fourth Amendment." *State v. Evans*, 67 Ohio St.3d 405, 407 (1993).

7

{¶ 19} "A *Mimms* order does not automatically bestow upon the police officer the authority to conduct a pat-down search for weapons." *Id.* at 409. Rather, "the question we must ask is whether, based on the totality of the circumstances, the officers had a reasonable, objective basis for frisking defendant after ordering him out of the car." *Id.,* citing *State v. Andrews*, 57 Ohio St.3d 86 (1991).

{¶ 20} Once a lawful investigatory stop has been made, a police officer may conduct a limited protective search for concealed weapons only if the officer reasonably believes that the suspect may be armed and a danger to the officer or to others. *Evans* at 408. "Typically, to conduct a pat-down search for weapons, an officer must have a 'specific and articulable' belief based on the 'reasonably prudent man' standard that an individual is armed and dangerous." *State v. Lozada*, 92 Ohio St.3d 74, 75 (2001), quoting *Terry v. Ohio,* 392 U.S. 1, 21, 27 (1968). "'[T]he protective pat down under *Terry* is limited in scope to its protective purpose and cannot be employed by the searching officer to search for evidence of crime.'" *State v. Holley*, 2004-Ohio-4264, ¶ 10 (2d Dist.), quoting *Evans* at 414.

{¶ 21} The Ohio Supreme Court has also cautioned that the placement of a driver into a patrol car during a traffic stop "alone is not a legitimate justification to subject the driver to a pat-down search for weapons." *Lozada* at 76. However, "it is reasonable for an officer to search the driver for weapons before placing the driver in a patrol car, if placing the driver in the patrol car during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid the dangerous condition." *Id.* at 79.

{¶ 22} In his motion to suppress, Cope challenged, among other things, the decision to expand the scope of the traffic stop to search Cope after he was ordered out of the vehicle. In overruling Cope's motion to suppress, the trial court noted that police officers may order

8

the driver and passengers to exit a vehicle during an ordinary traffic stop without having reasonable, articulable suspicion of further criminal activity. Decision (Oct. 30, 2024), p. 7, citing *Mimms*, 434 U.S. 106. The court stated that "'[a]n officer does not need to have suspicion of criminal activity to detain the motorist or to conduct the pat-down search.'" *Id.*, quoting *State v. Stephenson*, 2015-Ohio-233, ¶ 27 (12th Dist.). But that proposition of law is not entirely accurate, as explained in *Evans* and *Lozada*. Rather, the State must establish, based on the totality of the circumstances, that the officer had a reasonable, objective basis for frisking defendant after ordering him out of the car. *Evans* at 409. Based on our review of the testimony and video evidence submitted during the suppression hearing, we conclude that the State did not establish a reasonable, objective basis for Deputy Munn's pat-down of Cope.

{¶ 23} Deputy Munn testified, "Based off history with vehicles leaving that residence, locating firearms, narcotics in those vehicles for my safety, as well as the defendant's, I patted the exterior of his clothing down for weapons." He also testified that residents in that area had been complaining about residents of 424 Colonial Lane selling narcotics and that a week or two prior, deputies had recovered a firearm and narcotics during a traffic stop of a vehicle that had come from the Colonial Lane address. Deputies also had previously located a stolen vehicle in the driveway of that address.

{¶ 24} In short, Deputy Munn testified that he conducted a pat-down of Cope because other vehicles that had left that same residence in the previous few weeks contained a firearm or illicit drugs. Deputy Munn's testimony did not indicate that the driver of the vehicle stopped on January 12, 2023, or Cope had any connection to these other vehicles previously involved with law enforcement or to the occupants of those vehicles. Nor did Deputy Munn indicate that Cope or the driver had any prior connection to the residence on

9

Colonial Lane or any drug activity that may have occurred there. Deputy Munn also did not identify any actions by Cope or the driver that supported a suspicion that either was armed and dangerous.

{¶ 25} Sergeant Evers, who initiated the traffic stop, testified that he had noticed Cope was playing a game on his phone in the passenger seat and was not looking directly at the interaction between him and the driver, which he characterized as abnormal. When Sergeant Evers ran the identity information of the driver and Cope through his computer system, he discovered that the vehicle had previously been involved in an incident with a Hispanic male who was armed with a gun. The timing of that incident was not revealed, and no other facts related to the incident were disclosed. Sergeant Evers also reviewed notes of field interviews that stated Cope had previously been stopped leaving a "drug house." No other information was disclosed about when Cope had left a "drug house," nor did the State introduce any facts explaining what Sergeant Evers meant by a "drug house."

{¶ 26} Sergeant Evers's body cam video did not capture anything that was said between Cope and Deputy Munn leading up to or during the pat-down. However, the video did capture Sergeant Evers asking Deputy Arnett whether he wanted the occupants removed from the vehicle before the canine free-air sniff. Deputy Arnett responded, "Oh yeah." Sergeant Evers then instructed Deputy Arnett to "pull 'em out, pat 'em down, and we'll stick them in cars." After further discussion, it was decided the occupants would not be placed in the police cruisers.

{¶ 27} The testimony of Sergeant Evers and the video footage from his body camera did not provide any reasonable, objective basis for conducting a pat-down of Cope. Rather, it appears that Sergeant Evers ordered the pat-down as a standard operating procedure

10

once Deputy Arnett responded that he wanted the occupants out of the vehicle in preparation for the canine free-air sniff.

{¶ 28} Deputy Arnett, the canine handler, testified that it was the Montgomery County Sheriff Department's policy for a deputy to request occupants to get out of the vehicle and to check them for weapons in preparation for a canine free-air sniff. Although Deputy Munn conducted the pat-down, Deputy Arnett testified that he believed Cope had consented to the pat-down. Deputy Arnett stated, "[Deputy Munn] asked him if he could check him for any weapons. I believe that he said, I don't have any. Do you mind if I search you? Go ahead." Deputy Arnett said this exchange between Deputy Munn and Cope should have been recorded by the body cameras. However, the video footage from Deputy Munn's body camera did not contain any evidence that Deputy Munn asked Cope for consent to conduct a pat-down. Rather, Deputy Munn ordered Cope out of the vehicle and then escorted Cope back to the front of the cruiser where Deputy Munn told Cope that he was going to conduct a pat-down. Deputy Munn then conducted a pat-down. Notably, Deputy Munn testified that he had told Cope that he was going to pat him down but did not testify that Cope had voluntarily consented to the pat-down.

{¶ 29} In summary, the two primary justifications the deputy sheriffs put forth for conducting a pat-down of Cope were (1) that it was the Montgomery County Sheriff Department's policy for a deputy to remove occupants and conduct pat-downs in preparation for canine free-air sniffs and (2) that a couple of other vehicles that had left the same Colonial Avenue residence in the weeks prior to the stop involving Cope contained a firearm or illicit drugs. The first justification cannot form a reasonable, objective basis for conducting the pat-down of Cope. To hold otherwise would allow the *Terry* stop exception to swallow the rule against warrantless searches in any traffic stop involving a canine free-air sniff. "So

11

every single traffic stop could be transformed, as a matter of routine, into a *Terry* stop. This would violate the 'narrow scope' of *Terry* and dispense with any need for an officer to have specific and articulable facts to justify his actions." *Lozada*, 92 Ohio St.3d at 77.

{¶ 30} The second justification was framed by the deputies as an officer safety issue, which may, in certain circumstances, establish a reasonable, objective basis for a pat-down. However, in the instant case, there was no connection established between Cope and any criminal activity related to the vehicles that had left the Colonial Lane address prior to the deputies' encounter with Cope. Notably, none of the information considered by the deputies hinted in any way that Cope or the driver was armed and dangerous. Indeed, none of the deputies testified that they had suspected the driver or Cope was armed and dangerous. The deputies did not identify any actions by Cope or the driver that would have supported a reasonable inference that they were armed and dangerous. Rather, the deputies attempted to justify the pat-down of Cope as standard operating procedure when a canine free-air sniff is conducted.

{¶ 31} As a reminder, a pat-down "is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." *Terry*, 392 U.S. at 17. "Even a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." *Id.* at 24-25. At the same time, there is an immediate interest of a police officer to take "steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him." *Id.* at 23. But the term "officer safety" cannot be used as a talisman to justify a pat-down where there exists no reasonable, objective basis for conducting a pat-down. Allowing unsupported claims of officer safety to

12

routinely permit pat-downs would all but eviscerate the constitutional protection against unreasonable searches and render *Terry* virtually meaningless.

{¶ 32} Based on the evidence presented at the suppression hearing, we conclude that the sheriff's deputies did not have a reasonable, objective basis to believe Cope was armed and dangerous, which would have justified a pat-down. Therefore, the trial court erred by overruling Cope's motion to suppress evidence obtained as a result of the pat-down.

{¶ 33} Cope's assignment of error is sustained.

## III.    Conclusion

{¶ 34} Having sustained Cope's assignment of error, we reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.

. . . . . . . . . . . .

HUFFMAN, J., and HANSEMAN, J., concur.